**IMG-027**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3399
_____

MAMADOU NBAYE,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-520-789)
Immigration Judge:  Honorable Grace A. Sease

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 4, 2011
Before:  AMBRO, GREENAWAY, JR. AND GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 19, 2011)
_____

OPINION
_____

PER CURIAM

     Before us is a petition for review of an order of the Board of Immigration Appeals

("BIA") denying the Petitioner's motion to reopen his removal proceedings.  For the

following reasons, we will deny the petition.

I.

Mamadou Nbaye, a native and citizen of Guinea, attempted to enter the United States in 2005 using a stolen French passport. He was detained and subsequently pled guilty to use of a fraudulent passport, in violation of 18 U.S.C. § 3551. While detained, he applied for asylum and related relief. He claimed he would be persecuted on account of his political opinion if returned to Guinea. In support of this claim, Nbaye stated that he, his father, and his sister were members of the Rally of the Guinean People Party ("RPG"), which opposed the party of the then-president of Guinea. JA at 346. Nbaye claimed that he worked as a driver for the RPG, but quit after his father and sister were killed by members of the ruling party. Id. at 351. Shortly thereafter, he and his mother were beaten and he was imprisoned for ten months, until a friend paid a bribe for his release. Id. at 352-53. He went to France several months later and then traveled to the United States. Id. at 353-54.

In his hearing before the Immigration Judge ("IJ"), Nbaye offered his testimony, his identification card and passport from Guinea, a map of Guinea, and a few reports and articles about conditions in the country. JA at 311-40. The IJ found Nbaye "simply not credible" based on inconsistencies she perceived in his testimony and a "less than candid" demeanor. JA at 177-78. The IJ also faulted the lack of corroborating evidence and did not accept Nbaye's explanation that he had been unable to contact anyone to obtain corroboration. Id. The IJ denied relief, and the BIA affirmed in 2005. Nbaye did not petition for review of the BIA's final order of removal.

2

Several years later, in May 2009, Nbaye filed a counseled motion to reopen, contending that changed circumstances in Guinea warranted reopening of his removal proceedings. Nbaye cited a December 2008 military coup that overthrew the previous government and reports of abuses by security forces. JA at 51. He argued that there would be "escalated fighting among political groups" in Guinea and that his affiliation with the RPG was now an even greater reason to fear persecution, torture, and death. Id. In support of his motion, Nbaye submitted a 2008 State Department Report on Human Rights Practices in Guinea, as well as several articles about the coup. He also offered an undated letter from a friend stating that many of Nbaye's friends had been killed and that his mother had fled to Senegal. The friend warned him never to return to Guinea because "they" would torture and kill him. JA at 82. In addition to this evidence regarding country conditions, Nbaye also offered evidence to corroborate his previous testimony, including birth certificates for himself and his sister, death certificates for his sister and father, and a newspaper article describing their deaths and his imprisonment. JA at 59-80.

The BIA denied Nbaye's motion, finding that he had "not demonstrated changed country conditions satisfying the exception" for untimely motions to reopen. JA at 25. In pertinent part, the BIA concluded that the undated letter from Nbaye's friend was insufficient to demonstrate worsening conditions in Guinea material to Nbaye's claim. Id. at 24-25. Acknowledging that the articles and State Department report showed a change in the Government of Guinea, the BIA concluded that the documents did not

3

show how the change in government would affect Nbaye "differently from the general population of Guinea." Id. at 25. In other words, the documents did not show that "conditions have specifically worsened for supporters of the [RPG]." Id. Nbaye filed a timely petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252 to review the order denying Nbaye's motion to reopen. In his brief, Nbaye also seeks review of an order from the BIA denying his motion to reconsider the denial of his motion to reopen. His petition for review, however, concerns only the BIA's order denying his motion to reopen. Nbaye has not moved to amend his petition to include the order denying reconsideration. We therefore lack jurisdiction to review the BIA's order denying reconsideration because Nbaye has not filed a petition for review of that order. See 8 U.S.C. § 1252(b)(1).

The Government contends that Nbaye has waived any challenge to the BIA's order denying his motion to reopen by failing to address the order in his brief. See Resp. Br. at 15. We disagree. Although it is "well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal," United States v. Pellulo, 399 F.3d 197, 222 (3d Cir. 2002), and Nbaye does frame the issues for review in terms of the denial of the motion for reconsideration, he nonetheless refers to the "decisions" of the BIA in his argument and makes arguments that pertain to the substance of the BIA's denial of the motion to reopen. See Pet. Br. at 14-16. We therefore conclude that Nbaye has not waived review of the BIA's order denying the

4

motion to reopen.

III.

A motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." See 8 C.F.R. § 1003.2(c)(2). Nbaye filed his motion years after the BIA issued its final order of removal and he does not contest its untimeliness. Instead, Nbaye sought to proceed under the exception for motions based on "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).

We review the BIA's denial of Nbaye's motion to reopen for an abuse of discretion and may reverse only if it is "arbitrary, irrational, or contrary to law." Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007). We consider whether Nbaye presented both evidence of changed country conditions and a prima facie case for asylum. Id. at 312. "To establish a prima facie case for asylum, the alien must produce objective evidence that, when considered together with the evidence of record, shows a reasonable likelihood that he is entitled to relief." Huang v. Att'y Gen., 620 F.3d 372, 389 (3d Cir. 2010).

To show changed country conditions, Nbaye presented a letter from a friend, news articles about the coup, and a State Department Report. The BIA determined that the letter is not "sufficient to demonstrate worsening conditions in Guinea that are material"

5

to Nbaye's claim. JA at 24-25. The undated letter states "they have killed a lot of your friends, for example Mouctar, Moustapha, Kadiatou, etc." and warns Nbaye not to return because "[t]hey will torture you so that you suffer before they kill you." JA at 82. The writer does not elaborate on these dire events in the short letter and does not identify who "they" are. The BIA did not abuse its discretion in concluding that the vague or unconfirmed claims and warning in the letter are insufficient to constitute evidence of changed country conditions. Furthermore, we note that Nbaye attests that he received the undated letter in April 2008, many months before the December 2008 coup. JA at 134. Therefore, the letter describes events that occurred before the coup and cannot constitute evidence of changed conditions due to the coup.

With regard to the news articles and report, the BIA acknowledged that they "show that there has been a change in the government of Guinea since [Nbaye's] hearing," but "they do not demonstrate how the December 2008 coup will affect [him] differently from the general population of Guinea." JA at 25. The BIA then held that Nbaye failed to show changed country conditions. Id. This holding is somewhat confusing, given the BIA's apparent recognition that the background material showed a change of conditions in Guinea. It appears to us that the Board's rationale more aptly supports a conclusion that Nbaye failed to make a prima facie case that he is eligible for asylum in light of the changed country conditions. See Shardar, 503 F.3d at 312 (explaining that whether a movant has presented new evidence of changed country conditions and whether the evidence as a whole makes out a prima facie case for asylum are distinct issues).

6

Nonetheless, it is apparent that the BIA did not abuse its discretion by determining that the background material Nbaye submitted is insufficient to warrant reopening the removal proceedings. The BIA concluded that the material does "not demonstrate that conditions have specifically worsened for supporters of the [RPG.]" JA at 25. A review of the background material supports that conclusion. Although the State Department report and news articles describe turbulent conditions in Guinea following the coup, none of the material suggests that the new regime is targeting RPG members for persecution. Nbaye has thus failed to make the showing of a "a particularized threat of persecution" that is required of asylum applicants. Shardar, 503 F.3d at 316.

In his brief, Nbaye argues that he fears the Guinean military because they killed his family and imprisoned him and, therefore, the fact that the military now controls Guinea provides a "compelling basis" to reopen his removal proceedings. Pet. Br. at 16. This attempt to recharacterize his claim for asylum is of no avail. Eligibility for asylum must be based on a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Nbaye's asylum claim is clearly based on "political opinion," i.e., his membership in the RPG. JA at 123, 133. And, as explained above, the evidence he submitted in support of his motion to reopen does not show that the military coup in Guinea represents a particularized threat to RPG members.

For these reasons, we will deny the petition for review.

7